# United States Court of Appeals for the Federal Circuit

RECEIVED
RECEIVED

AUG 1 4 2006

AI STATUE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON A
BY_____ DEPUTY

05-1553

## TEGIC COMMUNICATIONS CORPORATION,

Plaintiff-Appellant,

v.

## BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM,

Defendant-Appellee.



05-CV-00723-ORD

FILED
U.S. COURT OF APPEALS FOR
THE FEDERAL CIRCUIT

AUG 1 0 2006

JAN HORBALY
CLERK

## JUDGMENT

ON APPEAL from the      United States District Court for
the Western District of Washington

In CASE NO(S).      06-CV-0723

This CAUSE having been heard and considered, it is

ORDERED and ADJUDGED:      AFFIRMED

ENTERED BY ORDER OF THE COURT

DATED: _____ AUG 1 0 2006 _____

_____
Jan Horbaly, Clerk

# United States Court of Appeals for the Federal Circuit

05-1553

FILED
LODGED
RECEIVED

AUG 1 4 2006

AS TO FILE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT for review
by FCA

TEGIC COMMUNICATIONS CORPORATION,

Plaintiff-Appellant,

v.

BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM,

Defendant-Appellee.

Kathleen M. Sullivan, Quinn Emanuel Urquhart Oliver & Hedges, LLP, of San Francisco, California, argued for plaintiff-appellant. With her on the brief were Charles K. Verhoeven, Jennifer A. Kash, and Helen E. Dutton.

Michael W. Shore, Shore Chan LLP, of Dallas, Texas, argued for defendant-appellee. On the brief were Kelly P. Corr and Kelsey Joyce, Corr Cronin Michelson Baumgardner & Preece LLP, of Seattle, Washington. Of counsel on the brief were Alfonso Garcia Chan, Shore Chan LLP, of Dallas, Texas, and Kenneth E. Shore, Shore West, PC, of Longview, Texas. Of counsel were Gerald Bill Hrycyszyn, Joseph F. DePumpo, and Jeffrey R. Bragalone, Shore Chan LLP.

Appealed from: United States District Court for the Western District of Washington

Judge Robert S. Lasnik

# United States Court of Appeals for the Federal Circuit

05-1553

TEGIC COMMUNICATIONS CORPORATION,

Plaintiff-Appellant,

v.

BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM,

Defendant-Appellee.

---

DECIDED: August 10, 2006

---

Before NEWMAN, Circuit Judge, ARCHER, Senior Circuit Judge, and GAJARSA, Circuit Judge.

NEWMAN, Circuit Judge.

Tegic Communications Corporation appeals the decision of the United States District Court for the Western District of Washington, dismissing a declaratory judgment action against the Board of Regents of the University of Texas System (herein "the

University") on the ground that this suit is barred by the Eleventh Amendment to the United States Constitution.[1] We affirm the dismissal.

## BACKGROUND

The University had filed suit in the Western District of Texas, charging forty-eight cellular-telephone companies with infringement of U.S. Patent No. 4,674,112 ("the '112 patent").[2] The '112 patent, entitled "Character Pattern Recognition and Communications Apparatus," is directed to a method of inputting text into a device keyboard, wherein the device software recognizes the text and predicts the word the user intends to type. The University is the owner of the '112 patent, by assignment from the inventors.

Tegic, a corporation of the State of Washington, sells and licenses text-input software, entitled "T9 Text Input," to 39 of the 48 cellular-phone company defendants in the suit brought in Texas by the University. T9 Text Input was created for use in cellular phones and other mobile devices that have fewer keys than a standard computer keyboard. Tegic explains that on a standard phone each key represents three letters, and the user selects a particular letter by hitting the key repeatedly (e.g., where the key represents "A," "B" and "C," the user taps the key twice to select a "B"). T9 Text Input allows the user to tap each key only once, with the software ascertaining each intended word with greater than 95% accuracy.

---

1    <u>Tegic Communications Corp. v. Board. of Regents</u>, No. C05-0723L (W.D. Wash. July 26, 2005).

2    The three suits are captioned: <u>Board of Regents v. BenQ</u>, No. A:05-CA181SS; <u>Board of Regents v. Alcatel</u>, No. A:05-CA198SS; and <u>Board of Regents v. Mitsubishi</u>, No. A:05-CA333SS. These cases were consolidated under case number A:05-CA181SS.

In view of the suit that the University had filed in Texas against Tegic's customers and licensees, Tegic brought this declaratory suit against the University in the United States District Court for the Western District of Washington. Tegic seeks a declaration that the '112 patent is invalid and unenforceable, and that the T9 software does not infringe, contribute to infringement, or induce infringement of the '112 patent. Tegic states that the University's action in Texas, ostensibly directed against the cellular-phone manufacturers, is actually directed against Tegic as the manufacturer and licensor of the software that in combination with the cellular-phone hardware infringes the '112 patent.

The '112 patent includes both apparatus and method claims. Claim 1 is the broadest apparatus claim:

1. A communications apparatus comprising:
receiving means operably connectable to a telephone or the like for receiving a series of transmitted tones corresponding to an input word and for decoding the tones into a series of codes, each tone being representative of a letter of the word, which letter is one of two or more alphabetic characters corresponding to the tone;
controller means coupled to said receiving means for processing said series of codes and outputting a signal indicative of a particular word which corresponds to said series of codes, said controller means including, recognition means for matching said series of codes with a programmed code sequence indicative of said particular word,
said recognition means including a stored vocabulary comprising a plurality of syllabic elements, each being representative of one or more alphabetic characters, said recognition means being operable for matching said series of codes with one or more syllabic elements and outputting a signal indicative of a particular word represented by said one or more syllabic elements; and
indicating means for receiving said signal and communicating the signal in a form perceptible to the user.

Claim 10 is a representative method claim:

10. A method of communicating, utilizing a signal-generating keyboard where at least some of the keys represent two or more alphabetic characters, comprising the steps of:

inputting a word into said keyboard by depressing a single key for
each alphabetic character of said word;

transmitting signals generated by the key depressions;

receiving said transmitted signals and decoding the signals into binary
code;

matching said binary code with one or more pre-programmed codes,
each pre-programmed code being representative of a syllabic element;

forming a representation of the word from the one or more syllabic
elements represented by the matched one or more pre-programmed codes;
and

outputting the word representation in a form perceptible to the user.

The University filed with the district court in Washington a covenant not to sue Tegic

for past, present, or future acts of infringement, and thereafter filed a motion to dismiss on

the ground that the district court lacked subject matter jurisdiction, see Fed. R. Civ. P.

12(b)(1), because there was no case or controversy between the University and Tegic.

The University also stated that it, as an arm of the State of Texas, is not subject to the

jurisdiction of the federal courts and is protected from Tegic's suit by the immunity granted

pursuant to the Eleventh Amendment to the Constitution.[3] The University also moved for

dismissal for lack of personal jurisdiction in Washington. See Fed. R. Civ. P. 12(b)(2). In

the alternative, the University requested transfer of Tegic's action to the Western District of

Texas. See 28 U.S.C. §1404(a) ("for the convenience of the parties and witnesses, in the

interest of justice, a district court may transfer any civil action to any other district or division

where it may have been brought"). The University also asked the court to exercise its

discretion to decline declaratory judgment jurisdiction, see Wilton v. Seven Falls Co., 515

U.S. 277, 282 (1995) (federal courts have "discretion in determining whether and when to

---

3       U.S. CONST. amend. XI. The Judicial power of the United States shall not be
construed to extend to any suit in law or equity, commenced or prosecuted against one of
the United States by Citizens of another State, or by Citizens or Subjects of any Foreign
State.

entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites"). Tegic opposed all of the grounds of dismissal and transfer.

The district court granted the motion to dismiss, on the ground that the University is immune from suit in the federal courts pursuant to the Eleventh Amendment and had not waived its immunity as to Tegic's declaratory judgment action. The district court considered and rejected each of Tegic's arguments: First, the court held that the University had not waived its immunity by filing a covenant not to sue. The court reasoned that the covenant was evidence that the University had not consented to suit, rather than the reverse. Second, the court held that the University had not waived its immunity by obtaining patent rights and taking steps to enforce those rights in federal court, citing College Savings Bank v. Florida Prepaid Postsecondary Education Expense Bd., 527 U.S. 666, 684-86 (1999) (a state does not "constructively waive" Eleventh Amendment immunity by obtaining federally created rights, even when it does so solely as a "market participant"). Third, the district court held that the University had not waived its immunity to suit in Washington by filing suit in Texas as to the same patent, reasoning that precedent does not support Tegic's position.

The district court considered whether it should transfer the case to the Western District of Texas in accordance with §1404(a), rather than dismiss it, but held that the appropriate course was to dismiss the case. The court expressed "serious doubts" as to whether Tegic could have brought this declaratory action in Texas, since Tegic was not a party to the suit filed by the University. The district court also noted Tegic's objection to transfer of the suit. The court reasoned that Tegic's proper recourse, if any, is to seek

intervention in the Texas action. The court did not discuss the University's other grounds for dismissal. Tegic appeals.

## DISCUSSION

The constitutional issue of Eleventh Amendment immunity is given plenary review. McKesson Corp. v. Div. of Alcohol Beverages & Tobacco, Dep't of Bus. Regulation of Florida., 496 U.S. 18, 29-31 (1990); Martin v. Hunter's Lessee, 14 U.S. (1 Wheat.) 304, 347-48 (1816); Regents of the University of New Mexico v. Knight, 321 F.3d 1111, 1123-24 (Fed. Cir. 2003). The University of Texas System is deemed to be an arm of the State of Texas, see Tex. Gov't Code §441.101(3), and Tegic does not dispute that the University is accorded Eleventh Amendment immunity. See Xechem Int'l, Inc. v. Univ. of Tex. M.D. Anderson Cancer Ctr., 382 F.3d 1324, 1327-28 (Fed. Cir. 2004) (recognizing the status of the University of Texas System as an arm of the state).

The Supreme Court has explained that the Eleventh Amendment enacts a waivable immunity from suit, not "a nonwaivable limit on the federal judiciary's subject-matter jurisdiction." Idaho v. Coeur D'Alene Tribe, 521 U.S. 261, 267 (1997). That is, a federal court has subject matter jurisdiction to hear cases involving federal law, but the Eleventh Amendment gives the state "a sovereign immunity from suit." Id. Therefore a federal court is not permanently barred from hearing cases brought against the state itself. "Rather, a State can waive its Eleventh Amendment protection and allow a federal court to hear and decide a case commenced or prosecuted against it." Id. The issue is not whether the federal court has subject matter jurisdiction, but whether the state has sovereign immunity and whether that immunity has been waived.

The Court has confirmed the applicability of Eleventh Amendment immunity to suits pertaining to violations of federal patent and trademark laws. *See* Florida Prepaid Postsecondary Education Expense Bd. v. College Savings Bank, 527 U.S. 627 (1999) (the Patent and Plant Variety Protection Remedy Clarification Act of 1992 did not abrogate Florida's Eleventh Amendment immunity); College Savings Bank, 527 U.S. at 673 (the Trademark Remedy Clarification Act of 1992 did not abrogate the State of Florida's Eleventh Amendment immunity).

Tegic argues that the University explicitly waived its immunity with respect to its '112 patent when it brought suit for infringement. The Court "has long recognized" that a state's Eleventh Amendment immunity may be waived. College Savings Bank, 527 U.S. at 675. Waiver is generally found either when the state makes a "clear declaration" that it intends to waive immunity, such as by statute, *see* Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299 (1990) (immunity with respect to suits against the Port of New York Authority waived by statute), or when the state voluntarily invokes federal jurisdiction, *see* Gunter v. Atlantic Coast Line R.R. Co., 200 U.S. 273 (1906) (immunity waived by voluntarily becoming a party to a suit). The University argues that waiver is not established solely by the state's participation in federally regulated conduct, even when the state acts as a market participant in a field traditionally occupied by private corporations. See College Savings Bank, 527 U.S. at 680 (overruling the "constructive waiver" holding of Parden v. Terminal Ry. of Ala. State Docks Dep't., 377 U.S. 184 (1964)). The parties do not dispute that the University's immunity has not been waived by statute. Tegic argues that waiver is established by the University's invocation of federal jurisdiction by filing suit against Tegic's customers/licensees in the Western District of Texas.

The Court has confirmed the principle that "where a State voluntarily becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment." Gunter, 200 U.S. at 284; see Clark v. Barnard, 108 U.S. 436, 447 (1883) (immunity from suit is a "privilege" that is waived when a state voluntarily submits to the jurisdiction of a federal court); Gardner v. New Jersey, 329 U.S. 565, 574 (1947) (the State waives any immunity respecting the adjudication of a claim voluntarily filed in federal court). In Lapides v. Board of Regents of the University System of Georgia, 535 U.S. 613 (2002) the State of Georgia was brought involuntarily into a case filed in state court, but then voluntarily agreed to removal to federal court. "In doing so, it voluntarily invoked the federal court's jurisdiction" and could not thereafter seek dismissal by invoking Eleventh Amendment immunity. Id. at 620. The Court explained that it would be "anomalous or inconsistent" for a state to both "invoke" and "deny" immunity in the same case. Id. at 619. "And a Constitution that permitted States to follow their litigation interests by freely asserting both claims in the same case could generate seriously unfair results." Id. The Court also distinguished "the cases that stand for" waivers "effected by litigation conduct" — Gunter, Gardner, and Clark -- from "the kind of constructive waivers repudiated" in College Savings Bank, supra:

> Georgia adds that this Court decided Gunter, Gardner, and Clark, before it decided more recent cases, which have required a "clear" indication of the State's intent to waive its immunity. But College Savings Bank distinguished the kind of constructive waivers repudiated there from waivers effected by litigation conduct. And this makes sense because an interpretation of the Eleventh Amendment that finds waiver in the litigation context rests upon the Amendment's presumed recognition of the judicial need to avoid inconsistency, anomaly, and unfairness, and not upon a State's actual preference or desire, which might, after all, favor selective use of "immunity"

> to achieve litigation advantages. The relevant "clarity" here must focus on the litigation act the State takes that creates the waiver. And that act — removal — is clear.

535 U.S. at 620.

Applying these principles, the Federal Circuit in Regents of the University of New Mexico, 321 F.3d at 1126, held that "when a state files suit in federal court to enforce its claims to certain patents, the state shall be considered to have consented to have litigated in the same forum all compulsory counterclaims, i.e., those arising from the same transaction or occurrence that gave rise to the state's asserted claims." The court observed that "seriously unfair results" could result if a state were permitted to file suit in a federal court and at the same time claim immunity against the defendant's claims arising from the same conduct. Id. at 1125. "Moreover, because a state can surely anticipate that a defendant will have to file any compulsory counterclaim or be forever barred from doing so, it is not unreasonable to view the state as having consented to such counterclaims." Id. at 1126.

The University, in suing the telephone companies in Texas, voluntarily invoked federal jurisdiction, and waived any immunity respecting the adjudication of its claims, Gardner, 329 U.S. at 574, and any counterclaims asserted "in the same forum," Regents of New Mexico, 321 F.3d at 1126. The University argues that this waiver does not extend to the declaratory judgment action brought by Tegic in the Western District of Washington.

A declaratory action does not provide any substantive rights; it provides a procedure for a declaration of legal rights and relations. See Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240 (1937) (the declaratory action is procedural only). To determine immunity under the Eleventh Amendment it is necessary to look to the substantive charge, not to the

procedure for obtaining relief. Tegic seeks a declaration of noninfringement and patent invalidity and unenforceability. The University does not deny that it waived immunity as to defenses and counterclaims in the Texas district court, but argues that it did not waive immunity as to Tegic, or in the Washington forum.

The Court has stressed that a "State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued," Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S, 89, 99 (1984) (emphases in original), the Court holding that a state's waiver of suit in its own courts is not readily extended to include waiver of suit in federal courts, even for the same cause of action. Id. The Court explained the "problems of federalism inherent in making one sovereign appear against its will in the courts of the other." Id. at 100. Again in Port Authority Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 307 (1990), the Court reiterated that a state may control where it may be sued, stating that "issues of venue are closely related to those concerning sovereign immunity." The Court in Port Authority held that the state's waiver could be properly limited by state statute to suits "laid within a county or judicial district" that is "situated wholly or partially within the Port of New York District." Id. at 303.

Tegic relies on Regents of the University of California v. Eli Lilly & Co., 119 F.3d 1559 (Fed. Cir. 1997), wherein the Federal Circuit affirmed the transfer of a state's action from the Northern District of California to the Southern District of Indiana. However, we agree with the University that the case is inapposite because there was no claim or counterclaim against the University; the state was plaintiff, and the issue was the prosecution of a suit not against the state (University) but against the defendant Lilly as the accused infringer.

The University stresses that Tegic brought a new action, by a new party, in a new forum. We agree with the University that its filing of the Texas action did not establish waiver as to this separate action. While waiver in the litigation context focuses on the litigation act, the waiver must nonetheless be "clear," Lapides, 535 U.S. at 620. In Clark, 108 U.S. at 448, waiver to the "complete determination" of the litigation was clear from the state's voluntary intervention in that litigation; in Gardner, 329 U.S. at 574, waiver respecting the "adjudication" of a claim was clear from the state's filing of that claim; in Lapides, 535 U.S. at 619, waiver as to the resolution of the "case at hand" was clear from its voluntary removal of that case to a federal court. And in Regents of New Mexico, 321 F.3d at 1126, waiver as to compulsory counterclaims filed by the defending party "in the same forum" was clear from the state's filing of the suit in that forum, for the state could "surely anticipate" that such counterclaims, which would otherwise be forever barred, would be asserted. We discern no similar clear waiver in this case. Although here the University obviously "made itself a party to the litigation to the full extent required for its complete determination," Clark, 108 U.S. at 448, it did not thereby voluntarily submit itself to a new action brought by a different party in a different state and a different district court.

Tegic argues that under the "customer suit exception" a manufacturer's action to resolve patent infringement charges against its customers not only receives preferential treatment over a patent owner's earlier filed suit against the customers, but benefits from any waiver accompanying the earlier suit. The customer suit exception is an exception to the general rule that favors the forum of the first-filed action, Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 185 (1952); see Kahn v. Gen. Motors Corp., 889 F.2d 1078, 1081 (Fed. Cir. 1989) (holding, on the facts of that case, that it was error to favor the

manufacturer's second-filed suit), but does not override the immunity provided by the Eleventh Amendment. Tegic argues that when the University invoked the jurisdiction of a federal court, it necessarily waived its immunity against not only the defenses and counterclaims of the parties sued in Texas, but also against a manufacturer who would be favored under the customer suit exception when the manufacturer is the real party in interest in the litigation brought by the University. Tegic states that such a rule is necessary to avoid "inconsistency, anomaly, and unfairness" in federal court litigation, the words of Lapides, 535 U.S. at 620.

However, the guiding principles in the customer suit exception cases are efficiency and judicial economy, and Tegic has not established that it would be more efficient to enable this declaratory action to proceed in the State of Washington. See Kahn, 889 F.2d at 1081. The University points out that (1) the cellular-phone companies in the Texas action are not "mere resellers" of products manufactured by Tegic; (2) the cellular-phone companies have not agreed to be bound by any decision in favor of Tegic; and (3) Tegic is not the only source of the software used in the phones alleged to infringe -- the Texas action involves other software vendors, including Zi Corporation and Motorola, and other cellular-phone companies that are not customers of Tegic. See Katz v. Siegler, 909 F.2d 1459, 1463 (Fed. Cir. 1990) (in evaluating the customer suit exception "the primary question is whether the issues and parties are such that the disposition of one case would be dispositive of the other").

We agree that it would not be demonstrably more efficient to stay the Texas suits in favor of Tegic's manufacturer's suit in Washington, even if immunity were deemed waived. In addition, the University's express promise not to sue Tegic for any past, present, or

future acts of infringement weighs strongly against favoring Tegic's manufacturer's action in Washington. We conclude that the customer suit exception does not impose a waiver of immunity on the facts of this case, without deciding whether, on appropriate facts, such a situation could arise.

Tegic also argues that its lawsuit was "fully foreseeable," much in the same way that the defendant's counterclaims in Regents of New Mexico were foreseeable. However, the court's rationale in New Mexico was not merely that the compulsory counterclaims were foreseeable; it was that the resolution of the compulsory counterclaims was a foreseeable aspect of fully resolving the state's claims. It is not sufficient that a state's initiation of a civil action would make a related action "foreseeable." It has not been shown that Tegic's action is necessary to a "complete determination" of the claims brought by the University in the Texas court, or that the adjudication of Tegic's claims of noninfringement and invalidity is not available in the Texas action. As the district court observed, to the extent Tegic's participation is necessary to fully resolve the claims and counterclaims in the Texas action, Tegic may seek to intervene in Texas.

Tegic argues that allowing the University to assert immunity in this declaratory action will give it an unfair litigation advantage. Lapides, 535 U.S. at 620. Tegic states that its customers in Texas do not possess the technical information necessary to defend themselves or to attack the University's patent; that they lack an adequate incentive to defend against infringement; and that they will not be able to assert a laches defense that is personal to Tegic. Tegic cites Israel Bio-Engineering Project v. Amgen Inc., 401 F.3d 1299, 1306 (Fed. Cir. 2005), where this court reversed the district court's denial of a Rule 24 motion to intervene where the intervening party had a personal laches defense not

05-1553                                                                    13

available to other defendants. The University replies that Tegic's assertions illogically assume that Tegic will refrain from providing its licensees with the necessary technical information and the necessary defenses. The University points to Tegic's statement that it may have a duty to indemnify its licensees and assume their defense. The University further challenges Tegic's assertion that it has a laches defense that its customers do not have, and states that Tegic's arguments support intervention in the Texas action, but do not suggest the extension of Eleventh Amendment waiver to a separate suit by a new party in a new forum.

The district court observed that the University has not used its Eleventh Amendment immunity adversely against Tegic, but instead the University has committed itself not to sue Tegic. And to the extent that Tegic's interests may be impaired by the Texas litigation, Tegic may seek to intervene in that litigation. See Fed. R. Civ. P. 24(a)(2) (providing for intervention where an applicant claims an interest in property or transaction that is the subject of the action, and the disposition of the action may impair the applicant's ability to protect that interest unless the applicant's interest is adequately represented by existing parties). Such intervention would benefit from the University's waiver of "any immunity . . . respecting adjudication" of its claims, Gardner, 329 U.S. at 574, and would avoid "inconsistency, anomaly, and unfairness" in litigation, Lapides, 535 U.S. at 620.

Tegic states that it could intervene in the Texas litigation, file its declaratory judgment compulsory counterclaims, and then move to transfer to Washington to serve "the convenience of parties and witnesses, in the interest of justice," in accordance with 28 U.S.C. §1404(a). The district court was not persuaded. Nor are we, for none of these

predicate events has occurred and there is no showing that all of the issues, including those for which Tegic asserts superior capability, cannot be resolved in the Texas forum.

We affirm the dismissal of Tegic's suit on the ground that it is barred by the University's Eleventh Amendment immunity. We also affirm the district court's decision not to transfer the action to the Western District of Texas under §1404(a), recognizing the district court's "serious doubts" as to whether Tegic could have brought this independent action in Texas, separate from the ongoing suit in which the University is plaintiff. We agree with the district court that Tegic's recourse is to seek to intervene in the action in the Western District of Texas. The district court's dismissal of Tegic's suit is

### AFFIRMED.